UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Edward Johnson,

       Plaintiff,

       v.                             Civil Action No. 2:12-cv-138

Andrew Pallito et al.,

       Defendants.

## REPORT AND RECOMMENDATION
(Doc. 56)

Edward Johnson, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 claiming that he was wrongfully terminated from his job in the prison kitchen and that, in a separate incident, he was wrongfully placed in administrative segregation during an investigation of a missing handcuff key.  According to Johnson, the allegedly discriminatory termination and administrative segregation violated his rights under the Eighth Amendment and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Defendant Andrew Pallito, Commissioner of the Vermont Department of Corrections ("DOC"), previously moved to dismiss on several grounds. (*See* Doc. 9.)  The Court granted the Motion to Dismiss and granted Johnson leave to amend his Complaint.  (Doc. 16.)  As described more fully below, several amendments followed.

Currently pending is Defendants' Motion to Dismiss Johnson's Third Amended Complaint. Defendants assert that Johnson's Third Amended Complaint should be dismissed because it fails to comply with Local Rule 15 and with the Court's prior orders. Defendants also contend that Johnson's Third Amended Complaint should be dismissed on substantive grounds. In support of that latter argument, Defendants state that they incorporate by reference their prior Motions to Dismiss (Docs. 9, 42) pursuant to Fed. R. Civ. P. 10(c).[1] Johnson has not filed any opposition.

For the reasons set forth below, I recommend that, to the extent Johnson seeks to renew his prior Motions to Appoint Counsel, that Motion should be DENIED. I further recommend that the Motion to Dismiss (Doc. 56) be GRANTED IN PART and DENIED IN PART.

## Factual Background

The factual allegations recited below appear primarily in Johnson's original Complaint (Doc. 4) and the documents attached to it. Despite the Court's repeated prior cautions that amended complaints supersede prior versions in all respects, as well as instructions to set forth all claims against all defendants in short and plain statements, Johnson's handwritten Third Amended Complaint (Doc. 47) and "2nd Third Amended Complaint" (Doc. 49) are nonconforming in a variety of ways. Johnson's failure to respect the mechanics of filing an amended complaint is one basis of Defendants'

---

[1] Defendants' invocation of Rule 10(c) is proper, but is nevertheless somewhat ironic, given that Defendants attack Johnson's pleadings for improperly incorporating his original Complaint by reference. That issue is discussed below.

pending Motion.  I discuss that issue below, but for present purposes recite Johnson's

factual allegations as I understand them based on all of Johnson's pleadings.

On June 9, 2010, Johnson received permission to be moved from the "RHU"

(Restricted Housing Unit) back into the general population.  (Doc. 40-1.)  On or about

June 24, 2010, Northeast Regional Correctional Facility ("NERCF") food service

supervisor Robert Blake hired Johnson to work in the prison kitchen.  The following day,

a different supervisor, Daniel Souliere, terminated Johnson from the kitchen job on the

ground that Johnson had not been out of Echo Unit (disciplinary segregation) for thirty

days prior to being hired.  According to Johnson, who is black, Souliere actually

terminated him because Souliere was "on a big power trip" and does not like him.  (Doc.

4 at 3.)  Johnson claims that Souliere then proceeded to hire a white inmate who had

previously been fired for fighting in the kitchen.

Johnson filed administrative grievances.  He filed an informal complaint on

June 25, 2010, to which staff responded on June 26, 2010 stating: "Needs to be out of

Echo 30 days before working in kitchen.  Can be rehired at that time."  (Doc. 4-2.)  On

July 11, 2010, he submitted a grievance, asserting that there was no such 30-day rule, and

that other inmates had been hired within 30 days of their release from Echo Unit.  (Doc.

4-3.)  On July 20, 2010, Souliere was apparently assigned to investigate and respond to

the grievance.  (*See* Doc. 4-6.)  On July 23, 2010, Souliere signed a response to Johnson's

grievance indicating:

> It is and has been kitchen policy that anyone receiving a major DR or being
> released from Echo unit must wait 30 days before being considered for
> employment in the kitchen.  Waiting 30 days does not guarantee

3

> employment in the kitchen. Anyone living in Delta unit may not be considered for employment until they move to another unit. Positions are unequivocally the discretion of Facility Food Service Supervisor. . . .
>
> Inmate Edward Johnson can reapply for a position in the kitchen at any time and will be considered for employment by the FFSS Souliere.

(*Id.*) On July 28, 2010, a supervisor issued a decision stating: "Concur with FSS decision." (Doc. 4-7.)

Johnson appealed the July 28, 2010 decision to the Facilities Executive, stating that he "would like to see th[e] policy as to why, where [sic] I can't be hired prior to getting out of Echo Unit." (Doc. 4-4.) The Executive apparently issued an unfavorable decision dated August 2, 2010, and on August 24, 2010 Johnson filed an appeal to Commissioner Pallito complaining that Souliere was unfairly involved in the grievance investigation. (Doc. 4-5.) There is no indication of a response by Commissioner Pallito. On October 19, 2010, Johnson filed a request form asking to see the 30-day policy. Souliere wrote the following response on October 21, 2010:

> It is the policy of this Kitchen Supervisor that any person sent to Echo or Foxtrot . . . must wait 30 days before they can be considered for hire. You may submit [an] application at any time. Page 42 of Inmate handbook [states:] "Under no circumstance does submitting an application guarantee a position in food service. Positions are unequivocally the d[e]cision of the Facility Food Service Supervisor (FFSS)."

(Doc. 4-1.)

The factual allegations and materials in the record relating to Johnson's administrative-segregation claim are as follows. On or about January 11, 2011, NERCF officials commenced an investigation regarding a missing handcuff key. NERCF treated the missing key as a serious incident. (*See* Doc. 40-4 at 4) ("NERCF was on Emergency

4

lock-down status on 1/11/11 for the entire day while all staff searched for this

item . . . .").  Indeed, under DOC policies, an inmate's possession of a handcuff key could

constitute a "major" disciplinary violation.  *See* State of Vermont, Agency of Human

Services, Department of Corrections, "Facility Rules and Inmate Discipline," #410.01

(2012) [hereinafter "Policy 410.01"], *available at*

http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-

programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline (listing

"major" violations as including conduct that "disrupts or interferes with inmate safety,

security, or the orderly running of the facility"); *see also* State of Vermont, Department

of Corrections, Policy and Operating Procedures, "Key Control – Facilities" (1985),

*available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-

550/401-500-programs-security-and-supervision/416 (describing effective key control as

"essential for the safe and orderly operation of a correctional facility").[2]

Johnson and two other inmates were reportedly identified as suspects.  Johnson

was placed in administrative segregation during the investigation; a "Segregation

Placement and Notice of Hearing" dated January 11, 2011 indicated that he was being

placed in segregation due to a "pending investigation," and that a hearing was scheduled

for January 18, 2011.  (Doc. 4-13.)[3]  The two other suspects—both of whom are white—

---

[2]  The Court may take judicial notice of the relevant DOC policies.  *See* Fed. R. Evid. 201(b), (d); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (explaining it is appropriate for district courts to take judicial notice of state prison rules and regulations).

[3]  Under the DOC's Inmate Discipline policy, an inmate may be placed in administrative segregation pending the results of a disciplinary investigation.  Policy 410.01 at 7, ¶ 2(c).

were allowed to stay in the general population.  On January 30, 2011, Johnson filed a

request form with Superintendent Mark Potanas seeking the results of the investigation.

In a response dated February 1, 2011, Potanas indicated: "You have been over-ridden up

to close custody."  (Doc. 4-15.)  The handcuff key was found on February 11, 2011.

On March 15, 2011 a second "Segregation Placement and Notice of Hearing" was

issued to Johnson.  (Docs. 4-14; 40-4 at 3.)  The March 15 notice stated that Johnson was

being placed in segregation because he had demonstrated that he was "a threat to the

secure and orderly running of the facility."  (*Id.*)[4]  The notice indicated that a hearing

would be held on March 21, 2011.  (*Id.*)  A hearing was held on that date, and the hearing

officer determined that administrative segregation was warranted because the evidence

showed that Johnson had gained access to the key and hidden it in the law library.  (*See*

Doc. 40-4 at 2.)  The Superintendent upheld the decision on March 23, 2011.  (*Id.*)

Johnson remained segregated from the general population, and was still segregated at the

time that he filed his Complaint on June 20, 2012.

Beginning with an informal complaint dated February 1, 2011 and ending with an

appeal to Commissioner Pallito dated March 29, 2011, Johnson grieved his segregation

but apparently received no favorable responses at any level of the grievance process.

(*See* Docs. 4-9, 4-10, 4-11, 4-12.)

---

[4]  The DOC's policy regarding "Placement on Administrative Segregation" lists a number of
reasons for confining an inmate to administrative segregation, including where "[a]n inmate has
demonstrated that they are a threat to the secure and orderly running of the facility."  State of Vermont,
Agency of Human Resources, Department of Corrections, "Placement on Administrative Segregation,"
#410.03 (2012), *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-
550/401-500-programs-security-and-supervision/410.03%20Admin%20Seg.pdf.

Johnson asserts that the above events caused him "mental anguish, stress, suffering" and "los[s] of personal property."  (Doc. 4 at 6.)  For relief, he seeks $1.5 million in monetary damages, Souliere's demotion or termination, and eradication of the handcuff-key incident from his prison record.

## Procedural History

Johnson filed his original Complaint on June 20, 2012.  He filed a Motion to Appoint Counsel on July 11, 2012, asserting that he cannot afford counsel to represent him.  (Doc. 6.)  The Court denied that Motion without prejudice on August 10, 2012, reasoning that Johnson had failed to demonstrate that his case is complex, that conflicting evidence would be presented, or that he would be unable to investigate and pursue his claims without the assistance of counsel.  (Doc. 8 at 3.)

On August 20, 2012, DOC Commissioner Pallito, as the sole Defendant in the case at the time, moved to dismiss for failure to state a claim, arguing that: (1) the claim for monetary damages against him in his official capacity was barred by the Eleventh Amendment; (2) Johnson failed to exhaust all available administrative remedies; (3) the Complaint failed to allege any physical injury; (4) there was no allegation of Pallito's personal involvement; and (5) the claims failed to allege a violation of a constitutional right or federal law.  (Doc. 9.)  Johnson subsequently filed a Motion to Amend to add several individuals as Defendants, but offered no additional facts in support of his claims. (Doc. 13.)

In a Report and Recommendation ("R&R") dated November 26, 2012 (Doc. 14), I recommended that the Court grant Pallito's Motion to Dismiss.  I concluded that the

Eleventh Amendment barred the recovery of monetary damages from Pallito in his official capacity; that the Prison Litigation Reform Act's ("PLRA") exhaustion requirement was satisfied; that the PLRA's physical injury requirement precluded any claim for compensatory damages; and that the equal protection and due process claims failed because Pallito was not sufficiently personally involved.  I also addressed the merits of all of Johnson's claims—even the claims that I concluded could not proceed against Defendant Pallito for lack of personal involvement.  I concluded that Johnson had stated class-of-one equal protection theories for his administrative-segregation and job-termination claims; that he had stated a due process claim for administrative segregation but had failed to state such a claim for job termination; and that he had failed to state an Eighth Amendment claim for either administrative segregation or job termination.

The R&R further recommended that Johnson's pending Motion to Amend (Doc. 13) his original Complaint be denied because it contained no new factual allegations against any of the individuals that Johnson sought to added as defendants; because it failed to meet the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure; and because it failed to satisfy Local Rule of Civil Procedure 15.  (Doc. 14 at 20–21.) However, the R&R also recommended that Johnson be granted leave to file an Amended Complaint.  The R&R instructed that any amendment "must contain all claims against all parties as it will supersede the original Complaint in all respects," and that it "must include 'a redlined version of the proposed amendment clearly designating additions and deletions' as well as a 'non-redlined reproduction of the entire amended filing' as

required by Rule 15 of the Local Rules of Civil Procedure for the District of Vermont." (*Id.* at 21.)

The Court adopted the R&R in full and allowed Johnson 30 days to file an Amended Complaint.  (Doc. 16.)  Johnson timely filed an Amended Complaint dated December 20, 2012.  (Doc. 18.)  However, as with his earlier Motion to Amend, the December 20 filing named additional defendants but failed to assert any facts with respect to them.  The December 20 filing also failed to contain "all claims" as required by the R&R.

On February 6, 2013, Johnson again moved to amend, stating that "there's a witness but I don't know his name."  (Doc. 25.)  On March 11, 2013, mindful of Johnson's *pro se* status, the Court granted the Motion and allowed Johnson 21 days to file another (Second) Amended Complaint.  (Doc. 33.)  The Court specifically instructed "**that an Amended Complaint takes the place of the original Complaint, effectively invalidating the original Complaint**," and that "the Amended Complaint, if filed, **must** set forth all of Johnson's claims against all Defendants in a short plain statement using numbered paragraphs."  (*Id.* at 3.)

On March 25, 2012, Johnson filed a document purporting to be the "amendment that the court has granted me," explaining his "hope[] that this amendment don't change my original complaint," and expressing confusion about the Court's prior rulings.  (Doc. 40.)  The document did not take the form required by the Court's March 11, 2013 Order, and instead assumed the incorporation of allegations set forth in the original Complaint. With respect to named parties, Johnson stated only that he is "suing the state."  (*Id.* at 1.)

9

He also stated that he thought he should be entitled to receive assistance from an attorney. (*Id.*)  The document was docketed as an Amended Complaint and a summons issued to the State of Vermont.

On April 12, 2013, Defendant Pallito filed a Motion to Dismiss, arguing that the (Second) Amended Complaint failed for the same reasons as the original Complaint. (Doc. 42 at 3.)  Johnson filed an opposition, and again stated that "I require an attorney to help me."  (Doc. 43 at 1.)  The opposition was also docketed as a Motion to Appoint Counsel.  (Doc. 44.)  The Court denied the Motion to Appoint Counsel on May 6, 2013, reasoning as follows:

> The Amended Complaint does not specify who is a defendant in this case.  In fact, it disavows that the action is brought against anyone in their official capacity, and the Court is left to guess who this action is brought against.  The Court has previously determined that Johnson's claim for money damages against [D]efendant Pallito in his official capacity is barred by the Eleventh Amendment.  His claims of constitutional violation by Pallito under the Due Process [C]lause, the Equal Protection [C]lause and the Eighth Amendment are barred by his failure to allege Pallito's personal involvement.  He alleges no personal injury, and therefore his claim for compensatory damages is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  (Doc. 14).  Johnson's Amended Complaint cures none of these challenges.  Moreover, the case is not particularly complex. Johnson has shown that he can investigate the crucial facts of the case, as evidenced by the large number of attachments to his Amended Complaint. No other special reason is advanced warranting the appointment of counsel.

(Doc. 45 at 3.)

In an R&R filed on May 17, 2013, I recommended that the Motion to Dismiss be granted, reasoning that the Second Amended Complaint "does not cure any of the deficiencies that led to the dismissal of the initial Complaint," and that, to the extent that the State of Vermont might be a party, all claims against it are barred by the Eleventh

10

Amendment.  (Doc. 46 at 6 & n.1.)  The R&R further recommended that Johnson be granted further leave to amend because he "may still be able to allege a plausible cause of action or series of causes against the responsible defendant or defendants."  (*Id.* at 7.) The R&R included the following instructions:

> If Johnson chooses to file an amended pleading, it must be entitled "Third Amended Complaint," include a case caption and a jurisdictional statement, clearly identify all named defendant(s), and set forth a short and plain statement of each claim so as to establish a plausible claim of liability on the part of each defendant.  Every paragraph of the Third Amended Complaint should be numbered.  **The Third Amended Complaint will replace all prior Complaints, thereby invalidating both the original Complaint and all subsequent Amended Complaints.**

(*Id.* at 7–8.)  On June 6, 2013, the Court adopted the May 17, 2013 R&R in full.  (Doc. 48.)

On June 4, 2013—two days before the Court adopted the May 17 R&R—Johnson filed a six-page handwritten "Third Amended Complaint" dated May 30, 2013 (Doc. 47). On June 20, 2013, Johnson filed a two-page handwritten document labeled "2nd Third Amended Complaint" dated June 17, 2013.  (Doc. 49.)  As with the Second Amended Complaint, Johnson's two most recent documents do not take the form required by the Court's prior orders.  Neither document includes a caption, a jurisdictional statement, or a redlined version of the proposed amendment accompanied by a non-redlined version. Johnson's filings also assume the incorporation of allegations set forth in the original Complaint.  (*See* Doc. 47 at 2) ("My claim is mentioned in my original complaint."); (Doc. 49 at 1) ("This is all on my original complaint; discrimination is my claim.")

With respect to named parties, the recent documents are not a model of clarity. The May 30, 2013 document lists the following eight individuals as "defendants": Andrew Pallito; FSS Dan Souliere; Cook C. Mary Westlake; C/O Katina Farnsworth; C/O Bernadette Dewing; Superintendent Celeste Girrell; Caseworker Steve Russell; and Superintendent Mark Potanas. (Doc. 47 at 1–5.) The May 30 document also states "I didn't sue anybody in their individual capacities and I said I'm suing the state." (*Id.* at 6.) Johnson's statement that he did not sue anybody in their individual capacity is directly contrary to the assertion in his Second Amended Complaint that he never said he was suing anyone in their official capacity. (Doc. 40 at 1.) The June 17, 2013 document names only two individuals: Souliere as the individual who fired Johnson from the kitchen, and Potanas as the individual who put Johnson in administrative segregation pending investigation. (Doc. 49 at 1.)

As to Defendant Pallito, Johnson's most recent filings do not add any factual allegations that might suggest Pallito's personal involvement in either the administrative-segregation matter or the job-termination matter. As the Court previously concluded, personal involvement is not necessary for the Eighth Amendment claims stemming from those two matters, but Johnson has alleged no additional facts suggesting that either his administrative segregation or his job termination constituted cruel and unusual punishment.

Johnson asserts that Souliere has still not produced the 30-day policy, and that Souliere's participation in the grievance process was improper. Johnson maintains that Souliere should be fired or demoted because he fired Johnson under the alleged 30-day

policy, but hired another inmate who had previously been fired for fighting, and who did not have to wait 30 days.

Johnson alleges that Superintendent Potanas was the individual who put him in administrative segregation pending investigation of the handcuff key, but who did not also put the two other suspects in segregation. Johnson also alleges that, after the key was found, he was kept in segregation. As to the remaining individuals named as "defendants" in Document 47—Westlake, Farnsworth, Dewing, Girrell, and Russell— Johnson apparently seeks no legal relief, but instead wants those individuals to supply testimony or documents.

Both of Johnson's most recent filings indicate that he wants legal counsel. (*See* Doc. 47 at 6) ("I believe I should be afforded an attorney to help me with this legal battle."); (Doc. 49 at 2) ("I think I need an attorney to help me with certain court matters.").

<u>**Discussion**</u>

## I.     **Rule 12(b)(6) Standard**

The Court has previously articulated the applicable legal standard. To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal,* the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. 556 U.S. at 679. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those

allegations in the plaintiff's favor.  *Id.* at 678.  This assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556–57).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  In *pro se* cases, courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'"  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.    Procedure: Pleading Requirements

Pursuant to Local Rule 15(a), "[a] motion to amend a filing must include: (1) a redlined version of the proposed amendment clearly designating additions and deletions; and (2) a non-redlined reproduction of the entire amended filing."  L.R. 15(a).  Johnson's two most recent filings do not accomplish the goal of showing precisely how his amended pleading differs from the original or any previous Complaint.  I recommend that the Court overlook that failure in this case.  First, it is not clear that Rule 15(a) applies to amended pleadings filed pursuant to the Court's grant of leave to amend, since no

14

"motion to amend" is necessary in such a case.[5]  *Cf. Bourn v. Gauthier*, No. 1:09-CV-

212, 2010 WL 1753478, at *3 (D. Vt. May 3, 2010) (leave to amend had not already been

granted; *motion* to amend was procedurally deficient because not accompanied by a red-

lined version).  Moreover, Johnson states in his handwritten Third Amended Complaint

that since he is still in a segregated unit, he has no access to a computer.  (Doc. 47 at 6.)

Therefore, requiring a redlined version of the amended pleading would be overly

burdensome and would not "secure the just, speedy, and inexpensive determination" of

this action.  Fed. R. Civ. P. 1.  Rather, as described below, those goals would be best

advanced by evaluating all of Johnson's filings under the Rule 12(b)(6) standard.

  Local Rule 15(b) states that "[n]o amendment may incorporate any prior filing by

reference without prior authorization of the court."  L.R. 15(b).  Here, the Court's prior

orders did not grant authorization to incorporate prior filings by reference, and the Court

repeatedly and explicitly warned Johnson that amendments would replace all prior

Complaints.  It appears from Johnson's repeated attempts at amendment that he did not

understand that each amended Complaint needed to re-state all of his factual allegations

in their entirety, and that it would be insufficient to simply refer to the original

Complaint.  Indeed, in his most recent filing, he suggests that he still does not understand

why his attempts at amendment have not moved the case past the motion-to-dismiss

---

[5]  The Court did require Johnson to comply with Rule 15(a) in its order granting Pallito's original
Motion to Dismiss, (Doc. 14 at 21), but did not analyze whether Rule 15(a) actually applied.  Subsequent
orders in this case did not include any explicit requirement to comply with Rule 15(a).  Under those
circumstances, it does not seem appropriate to expect compliance with Rule 15(a).

stage.  (*See* Doc. 49 at 1) ("If there is something I'm missing, well then the court should tell me.")

"[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."  *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000).  The purpose of that general rule is fairness, "for it breeds confusion and uncertainty if in responding to an amended pleading, a party is required to take into account a number of other, superseded pleadings."  *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447 (E.D. Va. 2009).  However, parties have a privilege under Rule 10(c) to adopt "a statement" in a pleading by reference. Fed. R. Civ. P. 10(c).  In some cases, an amended complaint's incorporation of an original complaint by reference is permissible.  *See McManus v. Williams*, 519 F. Supp. 2d 1, 5 (D.D.C. 2007) (where original complaint complied with the Federal Rules of Civil Procedure, amended complaint's incorporation of the original complaint by reference was no basis for granting a motion to dismiss).  In other cases, wholesale incorporation of prior complaints abuse Rule 10(c)'s privilege. *See Hinton*, 654 F. Supp. 2d at 447 (incorporation was not direct and explicit, and did not enable defendants to ascertain which portions of the amended complaints were not duplicative of their predecessors).  Because Rule 10(c)'s privilege can be easily abused, "wholesale incorporations—particularly those that seek to incorporate superseded versions of a complaint—must be examined with special care."  *Id.*

Here, Johnson has neither sought nor been granted prior authorization to incorporate his original Complaint by reference.  Moreover, the Third Amended Complaint (Doc. 47) and "2nd Third Amended Complaint" (Doc. 49) do not achieve a

sufficient level of clarity.  It remains unclear precisely who Johnson is suing or what relief he wants from whom.  The eight individuals listed as "defendants" in Document 47 is vague because it appears that all Johnson wants from some of them is testimony or documentation.  Document 49 names only two individuals and, unlike Document 47, does not suggest that Johnson intends to name the State of Vermont as a Defendant.  It is also unclear whether Johnson intends to sue any of the named individuals in their personal capacities (as suggested in Document 40), in their official capacities (as suggested in Document 47), or both.

Under these circumstances, the Court should follow the approach taken in *Hinton*. Namely:

> Although leave to replead might ordinarily be an appropriate remedy for abusing the incorporation privilege, it seems more fitting—now that plaintiff has filed three versions of the complaint—to overlook the incorporation issue and proceed to measure all three complaints against the Rule 8(a)(2) *Twombly-Iqbal* standard to determine whether in his three swings, plaintiff has hit a ball in play, or instead struck out.

*Hinton*, 654 F. Supp. 2d at 448 (footnotes omitted).  I therefore recommend that the Court decline to dismiss the action for failure to comply with the procedural pleading requirements, and instead proceed to apply the Rule 12(b)(6) standard to the collection of Johnson's pleadings taken together.

## III.    Substance: Whether Johnson Has Stated a Claim

I begin the substantive analysis by focusing on Johnson's claim for money damages against each potential Defendant.  As an initial matter, Johnson has still not alleged any physical injury, and thus any claim for compensatory damages is barred

under the PLRA.  (*See* Doc. 14 at 9.)  However, a liberal reading of Johnson's pleadings suggests that he might be seeking punitive or nominal damages, neither of which is barred by the PLRA's physical injury requirement.  *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002).  As to each individual Defendant—all of whom are state officials—I note that, to the extent they are named in their official capacities, any claim for monetary damages against them is barred by the Eleventh Amendment.  (*See* Doc. 14 at 4–5.)  The analysis below therefore assumes that each individual Defendant is being sued in his or her individual capacity for punitive or nominal damages.  After discussing Johnson's claims for money damages, I turn to Johnson's requests for other relief.

### A.     The State of Vermont

To the extent that Johnson has attempted to name the State of Vermont as a Defendant, his claims against the State for money damages cannot proceed.  As the Court previously noted (Doc. 46 at 6), the Eleventh Amendment bars claims in federal court seeking the recovery of money from a state.  *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  Moreover, punitive damages are not available against the State.  *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995).

### B.     Commissioner Pallito

As with Johnson's (Second) Amended Complaint (Doc. 40), Johnson's most recent filings (Docs. 47, 49) offer no new facts that might alter the Court's prior rulings on Johnson's claims against Commissioner Pallito.  There are no new allegations regarding Pallito's personal involvement that might breathe any life into Johnson's due process and equal protection theories for both the administrative-segregation and job-

termination claims.  Johnson apparently concedes as much, stating: "Mr. Pal[l]ito do[es] not have personal involvement with many actions that deal with prisoners."  (Doc. 47 at 1.)  Johnson's only assertion is that Pallito "should have had some personal involvement" because he is the Commissioner and he "oversees corrections, actions, violations and . . . prisoner rights."  (*See id.*)

Commissioner Pallito does have supervisory responsibilities, but that alone is insufficient to constitute personal involvement.  As the Court previously explained (Doc. 14 at 9), the doctrine of *respondeat superior* is not applicable to § 1983 claims, and a supervisor is not liable based on the alleged misconduct of his subordinates.  *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  A supervising defendant is only "personally involved" if one of the five conditions articulated in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), is met.  Here, the only potentially applicable condition is the second one, under which a supervisor is deemed to be "personally involved" if he failed to remedy the wrong "after being informed of the violation through a report or appeal."  *Colon*, 58 F.3d at 873. Nothing in Johnson's most recent filings alters the Court's prior conclusion that Johnson has failed to allege sufficient personal involvement with respect to his equal protection and due process claims.  Because both of those claims require discriminatory intent as an essential element, Pallito cannot be held liable for failing to remedy a wrong on the basis that he was potentially informed of the alleged violations through Johnson's grievance appeals.  (*See* Doc. 14 at 12.)

The second *Colon* factor does apply to Eighth Amendment claims, since those claims do not require discriminatory intent as an element. (*See id.*) But Johnson's assertions that his administrative segregation and his termination from the kitchen job violated the Eighth Amendment fail for other reasons. None of his pleadings suggest that his placement in administrative segregation deprived him of any basic human necessity or that DOC officials acted with deliberate indifference to his health or safety. (*See id.* at 19.) Moreover, denial of employment in prison does not infringe any protected right, let alone amount to cruel and unusual punishment. (*See id.* at 20.)

### C.     Dan Souliere

It is now relatively clear that Johnson intends to name Dan Souliere as a Defendant for his role in Johnson's termination from the kitchen job. (*See* Doc. 47 at 2; 49 at 1.) As the Court previously concluded, Souliere's policy that all inmates must finish serving disciplinary time 30 days prior to becoming eligible for hire "applies to all inmates, regardless of class, and is constitutionally permissible." (Doc. 14 at 15.) However, Johnson claims that he was disproportionately treated in relation to the other inmate that Souliere re-hired after previously being fired for fighting, and that the other inmate did not have to wait for 30 days. (*See* Doc. 49 at 1.) As the Court previously concluded, this general allegation that similarly situated people were treated differently under Souliere's 30-day rule is sufficient at this stage to state a "class of one" equal protection theory. (Doc. 14 at 16.)

A separate issue is Johnson's argument that Souliere "shouldn't be investigating himself if the grievance is against him." (Doc. 4 at 6.) As noted above, Souliere was

assigned to investigate and respond to Johnson's grievance.  That assignment is

apparently in violation of the following provision in DOC policy:  "No staff involved

with, or subject of the grievance, may act as the Investigator or participate in decision-

making regarding the grievance resolution.  This does not prohibit staff involvement in

any alternative dispute resolution process."  State of Vermont, Agency of Human

Services, Department of Corrections, "Offender Grievance System for Field and

Facilities," #320.01 (2007), *available at*

http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/301-335-

facilities-general/320.01.  The policy does not specify any consequence for failure to

comply with the conflict-of-interest rule.

　　　Although Defendants have not briefed this issue, I conclude that their Motion

should be granted with respect to Johnson's conflict-of-interest claim.  The apparent

violation of the DOC's conflict-of-interest policy is not laudable, but does not rise to the

level of a due process violation.  *See Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir.

2003) ("'Elevating a state-mandated procedure to the status of a constitutionally

protected liberty or property interest, would make process an end in itself rather than a

requirement whose constitutional purpose is to protect a substantive interest in which the

individual has a claim of entitlement.'" (quoting *Sealed v. Sealed*, 332 F.3d 51, 57 n.5 (2d

Cir. 2003))); *see also Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (no federally

protected liberty interest in state's compliance with its own prison grievance process);

*Lee v. Wilkinson*, No. 1:09-cv-00722-YNP PC, 2009 WL 2824758, at *5 (E.D. Cal. Sept.

1, 2009) (because there is no "separate constitutional entitlement to a specific prison

grievance procedure," prison official did not violate plaintiff's due process rights by investigating a grievance complaining about the official's own conduct).

### D.     Superintendent Potanas

Johnson's most recent filings make it sufficiently clear that he intends to name Superintendent Potanas as a Defendant for his role in Johnson's placement in administrative segregation (and failure to do the same to the two other suspects).  (*See* Doc. 47 at 5; Doc. 49 at 1.)  The Court previously concluded that, since Johnson claims that DOC officials treated him differently than the two other inmates, he has adequately stated a class-of-one equal protection claim with regard to the administrative-segregation incident.  (Doc. 14 at 15.)  Defendants have offered no argument as to why that conclusion would not apply to Superintendent Potanas.

### E.     Other "Defendants"

In Document 47, Johnson names five individuals as "defendants": Mary Westlake, Katina Farnsworth, Bernadette Dewing, Celeste Girrell, and Steve Russell.  However, Johnson does not allege that they are wrongdoers with respect to either the administrative-segregation or job-termination claims.  He specifically states that he seeks no relief from Westlake, and the only "relief" he seeks from the four other individuals is documentation or a statement.  (*See* Doc. 47 at 3–5.)  I therefore conclude that Johnson has not stated a claim against any of the remaining five "defendants."  *See Riegel v. N.Y. ex rel. N.Y. State Dep't of Transp.*, No. 1:05-CV-1503 (FJS/RFT), 2008 WL 150488, at *5 n.6 (N.D.N.Y. Jan. 14, 2008) (granting motion to dismiss claim against individual

named as defendant but against whom plaintiff did not assert any allegations of wrongdoing).

### F.      Non-Monetary Remedies

In addition to monetary damages, Johnson seeks Souliere's demotion or termination, and that "this handcuff key thing be washed off my record because I never had a handcuff key." (Doc. 4 at 7.) I previously recommended denying those requests because I had recommended dismissal of Johnson's Complaint in its entirety. (Doc. 14 at 22 n.5.) In light of the analysis above, that rationale would not support the same recommendation. It is therefore necessary to address Johnson's requests for non-monetary remedies.[6]

Assuming that Johnson prevails against any Defendant on his administrative-segregation claim, deletion of the handcuff-key incident from his record would not be an appropriate remedy. Although Johnson makes the conclusory assertion that he never had the handcuff key, that issue was already resolved against him in the disciplinary process, and there is no authority for this Court to hear an appeal from that determination. The only cognizable claim in this case is that Johnson was unlawfully treated differently than other inmates who were also suspects. Even if that is true, it would not warrant eradication of the handcuff-key incident from Johnson's record.

Assuming that Johnson prevails against any Defendant on his job-termination claim, his request that Souliere be demoted or terminated should be rejected. The usual

---

[6] Unfortunately, Defendants do not address this issue in their briefing.

remedies for discriminatory termination from employment include reinstatement, back pay, and damages.  *See Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 582 (2d Cir. 1989). If Souliere's decision to terminate Johnson was wrongful, any discipline should not come from this Court, but should instead be handled in accordance with DOC's personnel policies.  *See Jackson v. Martin*, No. 3:09cv270/LAC/MD, 2009 WL 4728160, at *6 (N.D. Fla. Dec. 2, 2009) (rejecting § 1983 plaintiff's request that each defendant be demoted as beyond the court's authority).

## IV.    Johnson's Renewed Request for Legal Counsel

As noted above, both of Johnson's most recent filings indicate that he wants legal counsel.  (*See* Doc. 47 at 6) ("I believe I should be afforded an attorney to help me with this legal battle."); (Doc. 49 at 2) ("I think I need an attorney to help me with certain court matters.").  To the extent that Johnson seeks to renew his prior Motions to Appoint Counsel (*e.g.*, Docs. 6, 44), his (renewed) Motion should be DENIED.  Johnson has failed to adhere to Local Rule 7(a)(1), which states: "The court will not consider any motion unless it contains the word 'motion' in the title."  More importantly, the Motion should be denied for reasons similar to the Court's conclusions regarding Johnson's prior Motions to Appoint Counsel.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *see also United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  Nevertheless, parties granted *in forma pauperis* status—like Johnson in this case—may move the Court for the appointment of an attorney if unable to afford one on their own.  *See* 28 U.S.C.

§ 1915(e)(1).  A court may ask an attorney to represent an indigent litigant under

§ 1915(e)(1) but Congress has not appropriated funds to pay an attorney who accepts an

appointment.  *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007).  A court is

granted "[b]road discretion" in making the decision to request that an attorney represent a

litigant pro bono.  *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

      The Second Circuit has laid out a framework for determining whether counsel

should be appointed for *in forma pauperis* litigants in civil cases.  *Id.* at 61.  As a

threshold requirement, a court must determine whether the indigent's claim "is likely one

of substance."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)

(citing *Hodge*, 802 F.2d at 61).  "[E]ven though a claim may not be characterized as

frivolous, counsel should not be appointed in a case where the merits of the . . . claim are

thin and [the plaintiff's] chances of prevailing are therefore poor."  *Id.* (denying counsel

where petitioner's appeal was not frivolous but nevertheless appeared to have little

merit).  Once satisfied as to the substance of a plaintiff's claims, a court should then

consider the indigent's ability to investigate the crucial facts, whether conflicting

evidence implicating the need for cross-examination will be the major proof presented to

the fact-finder, the indigent's ability to present the case, the complexity of the legal

issues, and any special reason why appointment of counsel would be more likely to lead

to a just determination.  *Hodge*, 802 F.2d at 61–62.

      It is difficult to evaluate the substance of Johnson's claims at this stage.  But even

assuming that Johnson's claims are "of substance," the other factors do not favor

appointment of counsel.  As the Court previously noted (Doc. 45 at 3), Johnson has

demonstrated his ability to investigate the crucial facts, as evidenced by the large number of attachments to his original Complaint as well as his Second Amended Complaint. The legal issues presented are not particularly complex. (*Id.*) And Johnson has articulated no other special reason warranting the appointment of counsel. (*Id.*)

## Conclusion

For the reasons set forth above, I recommend that, to the extent Johnson seeks to renew his prior Motions to Appoint Counsel, that Motion should be DENIED. I further recommend that Defendants' Motion to Dismiss (Doc. 56) be GRANTED IN PART and DENIED IN PART. All claims against all Defendants should be DISMISSED with the following exceptions: (1) Johnson's equal protection claim against Dan Souliere in his individual capacity for Johnson's allegedly discriminatory job termination, and (2) Johnson's due process and equal protection claims against Superintendent Potanas in his individual capacity for Johnson's allegedly discriminatory administrative segregation. For those remaining claims, any monetary relief should be limited to punitive or nominal damages.

Dated at Burlington, in the District of Vermont, this 11th day of February, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).